MARCHANT, Admr., Appellant,

v.

GOUGE, Appellee.

[Cite as *Marchant v. Gouge*, 187 Ohio App.3d 551, 2010-Ohio-2273.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 2009–CA–0143.

Decided May 19, 2010.

Samuel S. Riotte, David B. Malik, and Dennis J. Niermann, for appellant.

Daniel T. Downey and Jennifer George, for appellee.

Gwin, Presiding Judge.

{¶ 1} Gay Marchant, individually and as the administrator of the estate of Adam Marchant, appeals a summary judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of defendants-appellees Richland County

and Michael Gouge, which dismissed her complaint for wrongful death. Appellant assigns three errors to the trial court:

{¶ 2} "I.   The trial court erred when it granted summary judgment to moving parties Richland County and Richland County Sheriff's Deputy Michael Gouge because disputed issues of material fact exist regarding whether Deputy Gouge was on an emergency call and whether he operated his cruiser in a willful, wanton, or reckless manner such that Richland County and Deputy Gouge are not entitled to judgment as a matter of law.

{¶ 3} "The trial court erred when it granted summary judgment to Richland County as a matter of law because it applied incorrect law regarding what constitutes an emergency call under R.C. 2744.

{¶ 4} "The trial court erred when it granted summary judgment to Richland County and Deputy Gouge as a matter of law because it applied incorrect law regarding what constitutes willful, wanton, and reckless conduct under R.C. 2744."

{¶ 5} The trial court's eight-page decision and judgment entry sets out the facts it found to be material. On July 14, 2007, Richland County Sheriff's Deputy Michael Gouge was driving to what had been dispatched as an assault in progress at the Twin Lakes Golf Course. Gouge's police cruiser had its lights and sirens activated as it traveled down Lexington Avenue. The decedent, Adam Marchant, crossed Lexington Avenue in front of the police cruiser, was struck by the vehicle, and died shortly thereafter. Appellant is the mother and administrator of the decedent's estate. The trial court found that both the county and Deputy Gouge were entitled to political-subdivision immunity pursuant to R.C. Chapter 2744.

{¶ 6} It appears that Lexington Avenue in the area where the accident occurred has four lanes. It runs north-south and is flat and straight. The accident occurred at night, but the area was well lit. There was little traffic.

{¶ 7} Just before the accident, Adam Marchant was on the west side of Lexington, at the Circle K grocery store, in line at a carry-out window waiting to purchase beer. When his turn came, the cashier took a long time, and he left without his purchase and crossed Lexington. One of the other patrons called him back when the cashier returned with his purchase. Adam Marchant stepped back into the roadway and was struck by Gouge's cruiser. Marchant attempted to dodge the cruiser, but unfortunately Gouge swerved in the same direction and was unable to avoid striking him. Some of the eyewitnesses testified that Marchant appeared to be under the influence, and later tests confirmed that he had alcohol, THC, and a trace of cocaine in his blood.

{¶ 8} The trial court accurately found that a claim of political-subdivision immunity requires a three-tiered analysis. R.C. 2744.02(A)(1) sets forth a general rule that a political subdivision is not liable for damages in a civil action for injury, theft, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with the governmental or proprietary function. R.C. 2744.02(B)(1) through (5) set out exceptions to this general rule. Even if one of the exceptions might apply, there are still affirmative defenses available to the political subdivision. R.C. 2744.03(A); *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.

{¶ 9} R.C. 2744.02(B) enumerates the five exceptions to the general grant of immunity. Of the five exceptions, only (B)(1) is applicable in the instant case. Pursuant to R.C. 2744.02(B)(1), although a political subdivision generally enjoys immunity from civil tort liability, it is nonetheless held liable for its employees' negligent operation of a motor vehicle, with certain exceptions. R.C. 2744.02(B) provides:

{¶ 10} "Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

{¶ 11} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."

{¶ 12} R.C. 2744.02(B)(1) goes on to enumerate three full defenses to liability for the negligent operation of a motor vehicle. Of the three defenses, only section (a) is applicable in the instant case. R.C. 2744.02(B)(1)(a) states:

{¶ 13}"A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."

{¶ 14} Civ.R. 56 states:

{¶ 15} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be

rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶ 16} A trial court should not enter a summary judgment if it appears that a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the nonmoving party, reasonable minds could draw different conclusions from the undisputed facts, *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 424 N.E.2d 311. The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271. A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 733 N.E.2d 1186.

{¶ 17} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. This means we review the matter de novo, *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

{¶ 18} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating that a genuine issue of material fact does exist. Id. The nonmoving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 600 N.E.2d 791.

{¶ 19} Pursuant to Loc.App.R. 9(B), appellant argues that the court should not have granted summary judgment because the case presents disputed issues of material fact, and in addition, the court disregarded certain material facts. Appellant also alleges that the court applied Ohio law incorrectly regarding what constitutes an emergency call and what constitutes willful, wanton, and reckless conduct.

### I, II, & III

{¶ 20} In her first assignment of error, appellant argues that the trial court was incorrect in finding that there were no issues of material fact with regard to what constitutes an emergency call and what constitutes willful and wanton behavior. In her second assignment of error, she argues that the court misapplied the law regarding emergency calls, and in her third assignment of error, she asserts that the court erred in applying the law regarding willful and wanton conduct. A discussion of the law is necessary to determine what facts are material here, so we will combine our analysis of each for purposes of clarity. We will address the issues of the emergency call first.

{¶ 21} Appellant lists four issues of material fact regarding whether Deputy Gouge was on an emergency call at the time of the collision: (1) Was Deputy Gouge dispatched to Twin Lakes? (2) Did Deputy Gouge drive to Twin Lakes Golf Course while operating his sirens? (3) Was Deputy Gouge professionally obligated to drive to the Twin Lakes Golf Course? and (4) Was Deputy Gouge aware of all the facts of the call to which he was responding?

{¶ 22} The trial court found three facts conclusive on the issue of whether Deputy Gouge was on an emergency run. The court found that he was on active duty, driving to Twin Lakes Golf Course in response to a dispatch, with his lights and siren activated. Appellant urges that those facts are insufficient to permit the court to conclude that Gouge was on an emergency run. At least one other officer heard the call, but did not respond to the dispatcher about the Twin Lakes Golf Course, and Gouge was not among the officers specifically dispatched to the scene.

{¶ 23} It is undisputed that there was a fight at the Twin Lakes Golf Course during a late-night golf event. The victim of the assault, Perry Wheeler, testified in his deposition that a foursome of golfers ahead of him on the course surrounded him and assaulted him, including jumping on him, choking him, and striking him with a golf club. It is unclear from the record how much of this information the dispatcher communicated over the radio. The county is divided into geographical patrol zones. The zone containing Twin Lakes Golf Course was assigned to two other deputies, but any officer can respond to a call. Michael Brandt, one of the 9-1-1 dispatchers, testified in his deposition that protocol was to send two deputies.

{¶ 24} Deputy Gouge was in the process of responding to another call when he heard the dispatch about the assault at Twin Lakes Golf Course. He decided to respond to the call.

{¶ 25} In *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, the Ohio Supreme Court construed the Revised Code definition of the term

"emergency call." R.C. 2744.01(A) provides: "Emergency call means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."

{¶ 26} The Supreme Court explained that in the context of an emergency call, a "call to duty" is defined as " 'obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession.' " *Colbert* at ¶ 13, quoting Webster's 3rd New International Dictionary (1986), 705. The Supreme Court concluded that a call to duty was a situation in which a response by a police officer is required by the officer's professional obligation. The Supreme Court rejected an argument that an emergency call must be limited only to inherently dangerous situations. The Supreme Court found that the clear and plain language of the statute does not include such limiting language, and courts may not add it by judicial fiat. Id. at ¶ 15.

{¶ 27} Appellant also argues that reasonable minds could differ as to whether the siren was on at the time of the accident. Captain Larry Faith of Richland County Sheriff's Department investigated the accident and reported that he could not hear Deputy Gouge's siren on the two recorded radio broadcasts Deputy Gouge made to Deputy Sweat as he was en route prior to the accident, although Faith could hear Deputy Sweat's siren on the recording. The record contains depositions of five persons who witnessed the accident. Each testified that they heard the sirens and saw the cruiser lights prior to the accident.

{¶ 28} We find that the trial court was correct in determining that reasonable minds could not differ as to whether Deputy Gouge's cruiser had both the lights and sirens activated. Although Captain Faith could not hear the siren on the recorded radio broadcast, all the eyewitnesses at the scene testified that prior to the collision, the lights and siren were activated and that they knew a police cruiser was coming.

{¶ 29} We conclude that the trial court was correct in finding that the facts material to the question of whether this was an emergency call were undisputed. The statute does not restrict emergency calls to officers who are specifically dispatched to a situation. The language of the statute indicates that officers may rely on their personal observation and judgment to determine whether their response is proper. Pursuant to the Revised Code and the Supreme Court's decision in *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, the trial court correctly listed the three determinate facts, and any other potential factual disputes listed by appellant are not material to a determination of whether Deputy Gouge was on an emergency call at the time of the accident.

{¶ 30} We turn to the issue of what constitutes willful, wanton, and reckless conduct under R.C. 2744. Appellant asserts that the trial court simply stated that Deputy Gouge exercised care to pedestrians on Lexington Avenue, and Adam Marchant randomly appeared in the roadway. The court found that it was undisputed that Deputy Gouge applied his brakes and attempted to steer his cruiser to avoid Marchant, who twice placed himself in the cruiser's path.

{¶ 31} "Wanton misconduct" has been defined as "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 515, 605 N.E.2d 445.

{¶ 32} Wanton misconduct goes beyond mere negligence and requires "the evidence [to establish] a disposition to perversity on the part of the tortfeasor" such that "the actor must be conscious that his conduct will in all probability result in injury." *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31. The "wanton or reckless misconduct" standard set forth in R.C. 2744.03(A)(6) and "willful or wanton misconduct" standard set forth in R.C. 2744.02(B)(1)(a) are functionally equivalent. *Whitfield v. Dayton*, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, at ¶ 34.

{¶ 33} " '[W]illful misconduct' involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result." Id. at ¶ 29. The *Whitfield* court defined "willful misconduct" as " 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' " Id. at ¶ 30, quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 80 N.E.2d 122. In *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 319, 662 N.E.2d 287, the Supreme Court defined the term "willful misconduct" as "the intent, purpose, or design to injure." Appellant does not argue that Deputy Gouge acted willfully or intended to injure Marchant.

{¶ 34} The Supreme Court of Ohio has adopted the definition of reckless misconduct set forth in Restatement of the Law 2d, Torts (1965) 587, Section 500, which states that an actor's conduct is reckless if the following occurs: "[R]eckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Brockman*, 78 Ohio App.3d at 516, 605 N.E.2d 445.

{¶ 35} In *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 100, 559 N.E.2d 699, the Supreme Court of Ohio again quoted the Restatement, contrasting negligence and recklessness:

{¶ 36} "g. *Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

{¶ 37} In *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73, the Supreme Court noted that in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk. The Supreme Court reminded us not to use 20–20 hindsight in viewing a situation and not to color our decision with a consideration of any tragic results. Id. at ¶ 76. Our analysis must center upon the information and circumstances the actor had before him at the time he chose to act.

{¶ 38} The *O'Toole* court held that even violations of agency policy do not rise to the level of recklessness unless the circumstances demonstrate a perverse disregard for the risks involved. Id. at ¶ 92.

{¶ 39} Appellant lists the following as material facts in genuine dispute regarding whether Deputy Gouge operated his cruiser in a willful, wanton, or reckless manner: (1) Did Deputy Gouge operate his cruiser with lights and sirens operating? (2) Which lane was Deputy Gouge driving in when he struck and killed Adam Marchant? (3) What, if anything, prevented Deputy Gouge from seeing Adam Marchant cross three complete lanes of traffic? (4) Did Deputy Gouge scan the roadway before accelerating down it at 67 miles per hour in a 35–miles–per–hour zone before he struck Adam Marchant at 64 miles per hour? (5) Was Adam Marchant already in the road when Deputy Gouge turned onto Lexington Road such that Deputy Gouge would have seen him had he scanned

the road? (6) Did Deputy Gouge ever see Adam Marchant prior to hitting him? (7) Did Deputy Gouge brake his vehicle prior to hitting Adam Marchant? (8) Did Deputy Gouge take his foot off the gas pedal before he struck Adam Marchant? (9) Did Deputy Gouge attempt to steer to avoid Adam Marchant? (10) Were the tires on Deputy Gouge's vehicle 1/32 of an inch away from being legally bald on July 14, 2007? (11) Did Deputy Gouge have alcohol in his system when he struck Adam Marchant? (12) Was the tire pressure in Deputy Gouge's cruiser so low as to make operating the vehicle difficult?

{¶ 40} Deputy Gouge testified that he did scan the roadway and did not see Marchant until he re-entered the roadway seconds before the accident. The trial court correctly found that appellant presents no evidence to the contrary.

{¶ 41} Appellant argues that reasonable minds could find that the deputy was going too fast for conditions and did not slow appreciably before he struck Marchant.

{¶ 42} One of the eyewitnesses, Benjamin Rachel, deposed that he was traveling on Lexington Street in the opposite direction from the police cruiser at the time of the accident. He testified that he saw the cruiser swerve slightly, consistent with Deputy Gouge's statement. The other witnesses either did not observe the vehicle swerve or saw the cruiser only seconds before Marchant was struck. From their testimony, it appears that only Rachel had a vantage point from which he could observe a slight swerve.

{¶ 43} The record indicates that Deputy Gouge submitted to a breathalyzer test, which registered .001 percent. Lieutenant Michael Higgins of the Mansfield City Police Department deposed that .001 is not significant, and a person who has not been drinking at all could register that reading.

{¶ 44} In *Hewitt v. Columbus*, Franklin App. No 08AP–1087, 2009–Ohio–4486, 2009 WL 2759735, Officer Baughman was responding to an emergency call and was traveling with the right-of-way with his headlights illuminated on an unobstructed, illuminated roadway with sparse traffic. The officer was going approximately 67 miles per hour in a 45–miles–per–hour zone without his lights or siren. When a car turned left across his lane of travel, Officer Baughman decided to accelerate and swerve because he believed he could not avoid a collision by braking.

{¶ 45} The *Hewitt* court found no genuine issue of fact as to whether the officer's conduct rose to the level of recklessness when his actions were consistent with his training as a police officer. The court of appeals noted that under the circumstances of the case, the motorist was not deprived of his opportunity to yield the right of way despite the officer's speed. *Hewitt* at ¶ 29. The court concluded, "The evidence here simply does not demonstrate that Officer Baugh-

man knew or had reason to know that his actions created an unreasonable risk of physical harm substantially greater than that necessary to make his conduct negligent." *Hewitt* at ¶ 33.

{¶ 46} In the case at bar, the trial court correctly analyzed the totality of the circumstances and found, as in *Hewitt,* that the solitary fact of Gouge's speed is not sufficient to establish an issue of whether his conduct rose to the level of recklessness. The court found that the evening was clear and the cruiser's lights and sirens were activated. Gouge scanned the roadway for vehicles and pedestrians, and he took evasive action when Marchant appeared in his path.

{¶ 47} We agree with the trial court that the undisputed facts indicate that given the emergency situation, Deputy Gouge was operating his vehicle with the appropriate level of regard for pedestrian traffic. The depositions of the eyewitnesses make it clear that Marchant ran into the path of the vehicle only seconds before he was struck.

{¶ 48} We conclude that the trial court did not err in determining that the facts material to the case are not in genuine dispute, and we find that the court properly applied the correct law to the facts. For this reason, summary judgment was appropriate.

{¶ 49} Each of the assignments of error is overruled.

{¶ 50} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

Judgment affirmed.

WISE and DELANEY, JJ., concur.