[Cite as *Burlingame v. Estate of Burlingame*, 2011-Ohio-1325.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| GRACE BURLINGAME | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No.   2010-CA-00124 |
| ESTATE OF DALE BURLINGAME, | : |            2010-CA-00130 |
| ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellants |  |  |

And


JAMES R. COOMBS, II., ET AL

Defendants-Appellees



CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Case No. 2009CV00689

JUDGMENT: Reversed and Remanded

DATE OF JUDGMENT ENTRY: March 21, 2011

APPEARANCES:

For Plaintiff-Appellant, James Burlingame, Administrator of Estate of Grace Burlingame, Deceased

ELIZABETH A. BURICK
1428 Market Avenue North
Canton, OH 44714

For Appellant Eva Finley, Administrator
THOMAS LOMBARDI
101 Central Plaza S., Ste 900
Chase Tower
Canton, OH 44702

For Defendant-Appellee Canton City Fire Department,  Canton City Hall and James R. Combs

KRISTEN BATES AYLWARD
KEVIN L'HOMMEDIEU
Canton Law Department
City Hall
Canton, OH

For Appellant Eva Finley, Administrator
ORVILLE L. REED, III
Buckingham, Doolittle & Burroughs, LLP
3800 Embassy Parkway, Suite 300
Akron, OH  44333

*Gwin, P.J.*

{¶1} Plaintiff-appellant Joseph Burlingame, as the representative of the Estate of Grace Burlingame, deceased, and defendant-appellant, Eva Finley, as the representative of the Estate of Dale Burlingame, deceased, appeal a summary judgment of the Court of Common Pleas of Stark County, Ohio, which found defendants-appellees the City of Canton and its employee James R. Coombs II are entitled to immunity from liability arising out of an accident between the decedent's vehicle and a Canton City fire truck. Appellant assigns a single error to the trial court:

{¶2} "I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT AS REASONABLE MINDS COULD CONCLUDE THAT DEFENDANTS/APPELLEES OPERATED THE VEHICLE IN A WANTON, WILLFUL AND/OR RECKLESS MANNER."

{¶3} In the case before us, we are asked to decide whether appellees the City of Canton, and its employee James R. Coombs, II are entitled to immunity from liability in the operation of a fire truck that was involved in an accident with the decedent's van. For the reasons that follow, we hold that based upon the record of the case before us, reasonable minds could differ regarding whether they are.

{¶4} First, appellee the City of Canton has a complete defense to liability if, as the trial court found, the operation of the fire truck was not willful or wanton, and it was answering an emergency call. Similarly, the employees of the political subdivision such as appellee Coombs are also immune unless the employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C.

2744.03 (A)(6)(b). Second, traffic statutes and departmental policies are factors a jury may consider in determining whether Coombs' actions were reckless. Accordingly, under the facts presented to the trial court, whether Coombs' conduct in the operation of the fire truck on July 4, 2007 rose to the level of willful or wanton is a genuine issue of material fact for a jury to decide.

{¶5} Accordingly, we reverse the judgment of the trial court.

## I. Relevant Background

{¶6} On February 19, 2009, Grace Burlingame, filed suit seeking to recover money damages for the personal injuries that she suffered in a catastrophic collision that occurred on July 4, 2007 at the intersection of Cleveland Avenue and 18th Street, N.W. in the City of Canton. Burlingame named as Defendants, Joseph Burlingame, Executor of the Estate of Dale Burlingame, deceased, as well as the City of Canton, the Canton City Fire Department, James R. Coombs, II and Motorists Insurance Group.[1] Burlingame filed a cross-claim against the Canton City Fire Department, the City of Canton, James R. Coombs, II and the Canton City Fire Department seeking damages for the wrongful death of Dale Burlingame as a result of the accident of July 4, 2007. The City of Canton, James R. Coombs, II and the Canton City Fire Department filed an Answer to that cross-claim and included, among its affirmative defenses, that they were entitled to all the immunities, privileges and defenses granted to them pursuant to Chapter 2744 of the Ohio Revised Code. The City, Coombs and the Canton City Fire Department cross-claimed against the Estate of Dale Burlingame and claimed that they

---

[1] The claim against Motorists was that it should be required to set forth its subrogated claim to the extent that it had one.

were entitled to be indemnified for his alleged negligence. The City also sought to recover damages for the loss that it suffered to its fire truck.

{¶7} The trial court decided this case in appellees favor by summary judgment. We, therefore, construe the following facts from the record (which include depositions, transcripts, affidavits, pictures, accident reports and the pleadings) in the light most favorable to appellants. *O'Toole v. Denihan*, 118 Ohio St.3d 373, 889 N.E.2d 505, 2008-Ohio-2574 at ¶5. (Citing *State ex rel. Zimmerman v Tompkins* (1996), 75 Ohio St.3d 447,448 663 N.E.2d 639).

{¶8} On July 4, 2007, Appellants Grace and Dale Burlingame were heading home after enjoying a family picnic at their granddaughter's house. On their route home, Appellants were stopped at the red light at 18th Street, N.W., and Cleveland Ave, N.W. in Canton. When his light turned green, Mr. Burlingame slowly pulled his vehicle into the intersection to make a left turn. (Affidavit of Brooke James, filed by the City of Canton and Coombs in support of their Motion for Summary Judgment). Almost immediately, the Burlingames' vehicle was violently struck by Appellees' 20-ton fire-truck traveling at 40 mph from a perpendicular direction. (Deposition of James R. Coombs, II at 46). Mr. Burlingame was killed instantly; Mrs. Burlingame sustained serious personal injuries and later died from those injuries.

{¶9} The traffic signals in Canton, like many other large cities, have a device known as a "preemption system," that overrides the usual traffic light pattern. When properly initiated, this system affords an emergency vehicle a favored status (green light) at an intersection. (Deposition of Douglas E. Serban, City of Canton, Electronic

Computer Specialist at 12; 13; Coombs at 32, 44, and 45).  It is the siren that initiates the preemption system, not a horn or other device.  (Serban at 19).

{¶10} Coombs, who was driving, immediately activated the fire trucks lights and siren after pulling out of the station.  As he drove south on Cleveland Avenue, the siren stopped working just south of the 22nd Street intersection.  When Coombs could not successfully reactivate the siren, Captain Rick Sacco who was in the passenger seat of the fire truck ordered Coombs to slow down and use the truck's air horn to alert motorists.

{¶11} Testimony was presented that the City of Canton had trained its firefighters to stop at red lights even when responding to emergency calls.  (Deposition of Jerry Ward, firefighter with the City of Canton, City employee for 21 years at 9).  In addition, the firefighters were trained that, if the siren malfunctioned during a run, to convert the emergency response into a non-emergency.  (Ward, supra at 14).  In the case at bar, Coombs continued to proceed in an emergency response mode in spite of the malfunctioning siren.  (Ward, supra at 15).

{¶12} As Coombs approached the intersection on a red light, he could see the cross-traffic stopped on 18th Street.  (Sacco at 51; 52).  An ambulance traveling with its siren activated and headed south on Cleveland Avenue passed through the intersection while the Burlingames' vehicle was stopped at the red light.  (Coombs deposition at 59). Brooke James the driver of the vehicle that was behind the Burlingames' van saw the traffic light turn from red to green after the ambulance passed.

{¶13} As he approached the intersection, Coombs sounded the truck's air horn and was traveling at a speed between 35 to 40 miles per hour.  Coombs thought he saw

his traffic light turn green, however it did not. Coombs saw the van pull into the intersection and attempted to avoid hitting it by swerving left of center.

{¶14} Plaintiff's expert witness Robert Krause offered his opinion that Captain Sacco and firefighter Coombs knew or should have known that continuing an emergency response without their siren caused a substantial risk of harm to the general public. A second expert witness Steven Wolfe offered an opinion based upon his review, training and experience that Coombs' actions arise to the standard of willful, wanton and reckless conduct in the operation of the fire engine.

{¶15} The City of Canton, Canton Fire Department and James R. Coombs, II moved for summary judgment. The trial court found the evidence demonstrated that appellee Coombs' actions were negligent at best, and did not rise to the level of malicious purpose, bad faith or in a wanton and reckless manner. The court concluded appellee Coombs and the City of Canton had statutory immunity from the Burlingames' suit.

## II. ANALYSIS

{¶16} The issue before us is whether there is a genuine issue of material fact on the issue of whether appellees are entitled to immunity under R.C. Chapter 2744.

{¶17} Subject to a few exceptions, R.C. 2744.02(A)(1) provides that political subdivisions are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Likewise, immunity is extended, with several exceptions, to employees of

political subdivisions under R.C. 2744.03(A)(6). *O'Toole v. Denihan*, supra, 118 Ohio St.3d at 381, 889 N.E.2d at 512-513, 2008-Ohio-2574 at ¶ 47.

**{¶18}** Additionally, R.C. 2744.02(A) immunizes political subdivisions from actions for personal injury or wrongful death except as provided in Division (B) of 2744.02. R.C. 2744.02(B)(1) provides that a political subdivision is liable for death or injuries resulting from the negligent operation of a motor vehicle by an employee of the political subdivision acting within the course of its employment. However, R.C. 2744.02(B)(1)(b) provides that it is a full defense to the liability imposed by R.C. 2744.02(B)(1) upon the City if a fire truck causes an accident while in progress to a place where a fire is in progress unless the operator of the vehicle was operating the vehicle in a willful or wanton manner. A political subdivision's employee[2] is also immune from liability for personal injury or wrongful death unless his operation of the emergency vehicle was performed with malicious purpose, in bad faith, or in a wanton or reckless manner.[3]

**{¶19}** Thus, the issue at the summary judgment stage is whether viewing the evidence most strongly in favor of the appellants, there is a genuine issue of material fact as to whether Coombs' conduct in the operation of the fire truck on July 4, 2007 was wanton or willful.

## A. Standard of Review

**{¶20}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C).

---

[2] Coombs, in the case at bar.
[3] R.C. 2744.03(A)(6)(b).

**{¶21}** Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party.  *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.

**{¶22}** Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.  *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.

**{¶23}** "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.'  The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.  The evidence must be in the

record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112,***.

{¶24} "The Supreme Court in *Dresher* went on to hold that when neither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, 'and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)" *Welch v. Ziccarelli*, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶36-37, 40-42. (Parallel citations omitted.); *Egli v. Congress Lake Club* 5th Dist. No. 2009CA00216, 2010-Ohio-2444 at ¶ 24-26.

{¶25} In deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56(C). Even the inferences to be drawn

from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1127.

{¶26} Appellate review of summary judgments is *de novo.* *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35,506 N.E.2d 212. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. See *Dresher*, supra; *Coventry Twp. v. Ecker (*1995), 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327; *Am. Fam. Ins. Co. v. Taylor,* Muskingum App. No. CT2010-0014, 2010-Ohio-2756 at 25-31.

## B. RECKLESS, WILLFUL OR WANTON CONDUCT

{¶27} We turn to the issue of what constitutes willful, wanton, and reckless conduct under R.C. 2744.

{¶28} In *Brockman v. Bell* ( 1992), 78 Ohio App. 3d 508, 605 N.E. 2d 445, the First District Court of Appeals observed that civil liability for negligence is predicated upon injury caused by the failure to discharge a duty recognized in law and owed to the injured party. The existence of a duty depends on the foreseeability of the injury. The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances, should have anticipated that injury to another was the probable result of his performance or nonperformance of an act. As the probability increases that certain consequences will flow from certain conduct, the actor's conduct acquires the character

of intent and moves from negligence toward intentional wrongdoing.  Thus, the court concluded, the terms "wanton," "willful" and "reckless," as used to describe tortious conduct, might best be defined at points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct.

**{¶29}** We observe that willful and wanton misconduct describe two distinct legal standards.  *Gardner v. Ohio Valley Region Sports Car Club of Am.*, Franklin App. No. 01 AP-1280, 2002-Ohio-3556 at ¶11.

**{¶30}** Essentially, wanton misconduct is the failure to exercise any care.  *Hunter v. City of Columbus* (2000), 139 Ohio App. 3d 962, 968, 746 N.E. 2d 246.  Wanton misconduct has also been likened to conduct that manifests a "disposition to perversity." *Seymour v. New Bremen Speedway* (1971), 31 Ohio App.3d 141, 148, 509 N.E.2d 90, quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 269 N.E.2d 420, paragraph two of the syllabus.  "'[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' " *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, quoting *Roszman*, supra.  See *Gardner v. Ohio Valley Region Sports Car Club of Am.*, Franklin App. No. 01 AP-1280, 2002-Ohio-3556 at ¶13.

**{¶31}** Willful misconduct involves "an intent, purpose, or design to injure." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 375, 696 N.E.2d 201, quoting *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 510 N.E.2d 386.  Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct.  *Phillips v. Dayton*

*Power & Light Co.* (1994), 93 Ohio App.3d 111, 119, 637 N.E.2d 963, citing *Tighe v. Diamond* (1948), 149 Ohio St. 520, 526-527, 80 N.E.2d 122.

{¶32} In *Marchant v. Gouge,* this Court observed that wanton misconduct goes beyond mere negligence and requires the evidence to establish a disposition to perversity on the part of the tortfeasor such that the actor must be conscious that his conduct will in all probability result in injury. The "wanton or reckless misconduct" standard set forth in R.C. 2744.03(A)(6) and "willful or wanton misconduct" standard set forth in R.C. 2744.02(B)(1)(a) are functionally equivalent. 187 Ohio App.3d 551, 932 N.E.2d 960, 2010-Ohio-2273 at ¶ 32. (Citations and internal quotation marks omitted).

{¶33} In *Marchant*, supra we went on to observe that "willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. We cited *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532 which defined "willful misconduct" as "'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" Id. at ¶ 30, quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 80 N.E.2d 122. In *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 319, 662 N.E.2d 287, the Supreme Court defined the term "willful misconduct" as "the intent, purpose, or design to injure."

{¶34} The Supreme Court of Ohio has adopted the definition of reckless misconduct set forth in Restatement of the Law 2d, Torts (1965) 587, Section 500. *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 100, 559 N.E.2d 699, 704 at n.3.

Comments *f* and *g* to Section 500 of the Restatement of Torts 2d, supra*,* at 590, provide a concise analysis, which differentiates between the three mental states of tortious conduct with which we are confronted.  The court in *Marchetti* cited to these comments with approval.  They provide as follows:

**{¶35}** "*f.  Intentional  misconduct  and  recklessness  contrasted.*    Reckless misconduct differs from intentional wrongdoing in a very important particular.  While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.  It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless.  However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

**{¶36}** "*g. Negligence and recklessness contrasted.*  Reckless misconduct differs from negligence in several important particulars.  It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.  It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially  greater  in  amount  than  that  which  is  necessary  to  make  his  conduct

negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind." See also *Marchant v. Gouge*, supra at ¶ 36.

**{¶37}** Appellants argue Coombs violated traffic law and departmental policies while driving the fire truck. R.C. 4511.03 is entitled "Emergency or public safety vehicles to proceed cautiously past red or stop signal" and provides:

**{¶38}** "(A) The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

**{¶39}** The statute does not refer to use of sirens and flashing lights. It directs all emergency vehicles to slow down at red lights and stop signs.

**{¶40}** The trial court cited *Pelc v. Hartford Insurance Co.*, Stark App. No. 2003CA00162, 2003-Ohio-6021 as authority for the proposition immunity from civil liability is a separate issue from immunity under the traffic code. The court misstates our holding. In *Pelc*, we noted R.C.2744.02 gave immunity to the firefighter because he was responding to an emergency and because his actions were not willful or wanton. R.C. 4511.041 provides traffic laws do not apply to a driver of an emergency vehicle while responding to an emergency and gives immunity from prosecution for violating traffic laws. R.C. 4511.041 is a traffic law and does not provide immunity for civil liability for torts.

{¶41} In the case at bar, the trial court found violations of departmental regulations do not strip Coombs of immunity because a city regulation cannot override the state statute granting immunity.  The court stated courts in Ohio have repeatedly found violations of internal departmental policies are not relevant to a finding of malice, bad faith or wanton or reckless manner, citing *Elass v. Crockett*, Summit App. No.22282, 2005-Ohio-2142; *Shalkhauser v. City of Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, 772 N.E.2d 129, at paragraph 37; and *Rodgers v. DeRue* (1991), 75 Ohio App.3d 200, 598 N.E.2d 1312.  In actuality, these cases all arose out of the Ninth District, and we do not agree.  Violation of departmental policy or of traffic laws may be a factor for the jury to consider in determining whether the conduct of the defendants rose to the level of wanton or reckless.

{¶42} Appellee cites us to *O'Toole v. Denihan* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505 as authority for the proposition a plaintiff cannot maneuver around political subdivision immunity by alleging violations of departmental policies or the Ohio Administrative Code.

{¶43} In *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73, the Supreme Court noted that in the context of R.C. 2744.03(A) (6) (b), recklessness is a perverse disregard of a known risk.  The *O'Toole* court held that violations of agency policy could rise to the level of recklessness if the circumstances demonstrate a perverse disregard for the risks involved.  Id. at ¶ 92.  The Court said:

{¶44} "Appellee's final attempt to maneuver around George-Munro's immunity status is based on the allegation that George-Munro violated various Ohio Administrative Code and CCDCFS policies regarding investigations.  Given our

definition of "recklessness," a violation of various policies does not rise to the level of reckless conduct unless a claimant can establish that the violator acted with a perverse disregard of the risk. *** Without evidence of an accompanying knowledge that the violations "will in all probability result in injury," *Fabrey,* [*v. McDonald Village Police Department*] 70 Ohio St.3d at 356, 639 N.E.2d 31, evidence that policies have been violated demonstrates negligence at best. ***" O'Toole at paragraph 92.

{¶45} The laws and policies are designed to make emergency responses safer for the public. However, they also exist for the protection of the firefighters, who already face serious personal risks in their day-to-day jobs, and who must not be further imperiled en route to their humanitarian roles. We find violations of traffic statutes and departmental policies are factors a jury may consider in determining whether Coombs' actions were reckless.

{¶46} The 2008 Fire Department Policy Vehicle Operations/ Security requires drivers of fire department vehicles to come to a complete stop: if directed by a law enforcement officer; for red traffic lights; for stop signs ; for negative right-of way intersections; for blind intersections; if the driver cannot account for all lanes of traffic in an intersection.

{¶47} The Canton Fire Department Policy Incident and Collision Investigation guidelines list collisions at intersections preventable if: the driver failed to completely stop at an intersection controlled by a red control device or stop sign; the driver failed to control speed so the vehicle could be stopped safely; the driver failed to check cross traffic and wait for all lanes of traffic to stop or clear before entering the intersection, even if the driver had the right of way; the driver pulled out into the face of oncoming

traffic; the driver collided with a vehicle making a turn; the driver collided with a vehicle making a turn in front of the city vehicle.

{¶48} Appellants urge from the above facts, reasonable minds could draw different conclusions regarding whether Coombs operated the fire truck recklessly.

{¶49} The question of whether a person has acted recklessly is almost always a question for the jury. *Hunter v. Columbus* (2000), 139 Ohio App. 962, 746 N.E. 2d 246, decided by the 10th District Court of Appeals. In *Hunter*, an emergency vehicle responding to an emergency call entered an intersection at 61 miles per hour in a 35 miles per hour zone. The court of appeals acknowledged the emergency vehicle operator's motives were humanitarian, but found nevertheless, he did not necessarily have immunity because the matter presented a genuine issue of fact to the jury. The *Hunter* case cited *Brockman v. Bell* (1992), 78 Ohio App. 3d 508, 605 N.E. 2d 445, arising out of the Eleventh District Court of Appeals, and *Ruth v. Jennings* (1999), 136 Ohio App. 3d 370, 736 N.E. 2d 917, arising out of the Twelfth District Court of Appeals. The *Bell* case involved a collision between an ambulance and a private vehicle, although *Ruth* concerned an excessive force to arrest situation. However, all three of the cases the Hunter court cited found resolution of the case was a matter for the jury.

{¶50} The Ohio Supreme Court has explained: negligence is mere inadvertence, incompetence, lack of skill, or failure to take precautions that would allow the person to cope with a possible or probable future emergency. Reckless consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The person does

not intend to cause the harm that results from it but realizes or, from known facts, should realize that there is a strong probability that harm may result, even though the person hopes or even expects that the conduct will prove harmless.  Intentional misconduct occurs when the person intends to cause harm.  *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699, footnote 3, citing Comments *f* and *g* to Section 500 of the Restatement of Torts 2d.

{¶51} The spectrum of intent stretches from negligence, through reckless, to intentional, and there are no bright lines.  It is a jury question where on the continuum the appellees' actions fall.  We agree with the *Bell* court that the line between willful and wanton misconduct and ordinary negligence can be a very fine one, *Bell*  at 517, citing *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, 504 N.E. 2d 19;  *Hawkins v. Ivy* (1977), 50 Oho St. 2d 144, 363 N.E. 2d 367; *Tighe v. Diamond* (1948), 149 Ohio St. 520, 80 N.E. 2d 1122; and *Reynolds v. City of Oakwood* (1987), 38 Ohio App. 3d 125, 528 N.E. 2d 578.  The *Reynolds* case arose out of the Second District Court of Appeals and dealt with a collision between a police car utilizing the siren and lights and a pedestrian vehicle.

{¶52} In *Hunter,* supra, the court of appeals noted each case must be evaluated on its particular facts, and the use of a siren and flashing lights is one factor a jury must consider.  Whether the emergency vehicle has crossed left of center may be a factor, as is the speed at which an emergency vehicle is traveling, because it may exceed the reaction time of even an alert driver.  Id., at 970-971.  The *Reynolds* court found use of a siren and flashing lights is not the sole determinative fact, and the court discussed tree-lined streets as possible impairments to visibility and audibility.  Id. at 127.

**{¶53}** The question of whether conduct is reckless in the case at bar in relation to whether the probability of harm is great and known to the alleged tortfeasor requires a more substantial analysis. The city cites situations where emergency vehicle drivers were not found to be driving in a wanton or reckless manner, but each situation must be evaluated on its own unique facts. In this case, the circumstances are extreme enough that evaluation of whether the recklessness was great enough to be reckless or wanton misconduct is a matter for the trier of fact. The fact that the siren was not on is, of course, a matter that can be considered by the jury in determining whether appellants proved wanton or reckless misconduct, but the driver's conduct must be evaluated based upon all of the circumstances at the time he choose to continue into the intersection at the speed he was traveling.

**{¶54}** "It is assumed that twelve men know more of common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." *Sioux City & Pennsylvania Railway. Co. v. Stout*, (1873) 84 U.S. (17 Wall.) 657,664. Justice Story was writing in defense of one of the foundations of the American system of justice: the Seventh Amendment to the United States Constitution. It provides:

**{¶55}** "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

{¶56} Although the Seventh Amendment is not directly applicable to the individual states, Ohio has guaranteed the right to jury trial in Section 5, Article I of the Ohio Constitution. Article I section 5 of the Ohio Constitution provides:

{¶57} "The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

{¶58} Because the right to jury trial is a substantive fundamental right, any rule or statute curtailing that right must be examined under a microscope. For this reason, the Ohio Supreme Court has held that even if the facts of a given case are undisputed, if a jury could draw different conclusions from those facts, a summary judgment cannot be entered. *Houndshell v. American States Insurance Company* (1981), 67 Ohio St. 2d 427. The jury must decide questions of fact; the judge decides how the law applies to those facts. The judge must not weigh the credibility of the evidence and must not decide how much emphasis to put on any one piece of properly admitted evidence.

{¶59} Summary judgment can be an important tool to streamline what may become a lengthy process. It is intended to weed out those cases that have no merit, or those that can be resolved simply by applying the law. However, courts must not be in a rush to judgment and must carefully preserve the right of litigants to have a jury of their peers determine the facts of their case. Recently, the Ohio Supreme Court explained:

{¶60} "This right [to a jury] serves as one of the most fundamental and long-standing rights in our legal system, having derived originally from the Magna Carta. See *Cleveland Ry.v. Halliday Co.* (1933), 127 Ohio St. 278, 284, 188 N.E. 1. It was

"[d]esigned to prevent government oppression and to promote the fair resolution of factual issues." *Arrington v. Daimler Chrysler Corp.,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, 21.  As Thomas Jefferson stated, the right to trial by jury is "the only anchor, ever yet imagined by man, by which a government can be held to the principles of it's [sic] constitution."  Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), reprinted in 15 The Papers of Thomas Jefferson (Boyd Ed.1958) 269.

**{¶61}** "However, the right is not absolute.  See *Arrington* at 22. Section 5, Article I guarantees a right to a jury trial only for those causes of action in which the right existed in the common law when Section 5 was adopted.  See *Belding v. State ex rel. Heifner* (1929), 121 Ohio St. 393, 169 N.E. 301, paragraph one of the syllabus.  It is settled that the right applies to both negligence and intentional-tort actions.  See *Arrington* at 24." *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007 -Ohio- 6948, 880 N.E.2d 420.

**{¶62}** This case is far from over.  Our holding here does not mean appellants recover; it just means they could have an opportunity to present their case to a jury who will decide whether Coombs was reckless.  It means there are important issues yet to be decided.

**{¶63}** We find the trial court erred in finding reasonable minds could not differ on this issue.  Accordingly, the assignment of error is sustained.

{¶64} For the foregoing reasons the judgment of the Court of Common Pleas, Stark County, Ohio is reversed, and the cause is remanded for further proceedings in accordance with the law and consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

WSG:clw 0204

[Cite as *Burlingame v. Estate of Burlingame*, 2011-Ohio-1325.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

GRACE BURLINGAME                          :
                                          :
          Plaintiff-Appellant             :
                                          :
                                          :
-vs-                                      :          JUDGMENT ENTRY
                                          :
ESTATE OF DALE BURLINGAME,                :
ET AL                                     :
                                          :
                                          :
          Defendants-Appellants           :          CASE NO.          2010-CA-00124
And

JAMES R. COOMBS, II., ET AL

          Defendants-Appellees


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas of Stark County, Ohio, is reversed, and the cause is

remanded to the court for further proceedings in accordance with law and consistent

with this opinion.  Costs to appellees.


                                   _____
                                   HON. W. SCOTT GWIN


                                   _____
                                   HON. WILLIAM B. HOFFMAN


                                   _____
                                   HON. JOHN W. WISE

[Cite as *Burlingame v. Estate of Burlingame*, 2011-Ohio-1325.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

GRACE BURLINGAME                          :
                                          :
          Plaintiff-Appellant             :
                                          :
                                          :
-vs-                                      :          JUDGMENT ENTRY
                                          :
ESTATE OF DALE BURLINGAME,                :
ET AL                                     :
                                          :
                                          :
          Defendants-Appellants           :          CASE NO. 2010-CA-00130

And

JAMES R. COOMBS, II., ET AL

          Defendants-Appellees


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.  Costs to appellees.


                                    _____
                                    HON. W. SCOTT GWIN

                                    _____
                                    HON. WILLIAM B. HOFFMAN

                                    _____
                                    HON. JOHN W. WISE