RUTH, Appellant,

v.

JENNINGS et al., Appellees.

[Cite as *Ruth v. Jennings* (1999), 136 Ohio App.3d 370.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

No. CA99–05–013.

Decided Dec. 13, 1999.

*James C. Thompson,* for appellant.

*Smith & Colner* and *Steven Lee Smith,* for appellees.

WILLIAM W. YOUNG, Presiding Judge.

Plaintiff-appellant, Randy Ruth, appeals the decision of the Fayette County Court of Common Pleas granting summary judgment on behalf of defendants-appellees, Sergeant S.R. Jennings, Officer Shannon Long, Officer Chancey Scott, and Chief Larry Mongold, all officers of the Washington Court House Police Department ("WCHPD").[1]

On January 15, 1996, the WCHPD received a call to investigate a breaking and entering and alleged domestic violence at 909 East Temple Street, Washington Court House, Fayette County, Ohio. Appellant had broken into the residence and was threatening his wife, Vanessa, with a knife. Criminal complaints and an

---

 When referred to collectively, defendants-appellees will be referred to as "appellees." When referred to individually, they will be referred to by their last names.

arrest warrant were filed against appellant for aggravated burglary and domestic violence, but appellant was not arrested at the time.

The following day, another call was received seeking police assistance at the residence. Sgt. Jennings and Officers Long and Scott responded to the call. When the officers arrived at the residence, they found appellant on the front porch. The officers were aware of the outstanding arrest warrant for appellant. The officers approached appellant to arrest him.

Accounts of what followed differ. Appellant contends that the officers forced him to the ground and handcuffed him from behind. According to appellant, the officers began to beat and kick him, and spray him with mace. One of the officers is alleged to have kicked appellant in the groin. The officers assert that they used only the minimum force necessary to restrain appellant and that appellant resisted arrest. The officers admit to using mace to subdue appellant, but they contend that appellant was not kicked, struck, or injured.

Appellant was taken to the Washington Court House jail. Appellant asserts that he complained to Chief Mongold regarding the arresting officers and requested medical treatment, but that Chief Mongold refused to provide any treatment. Appellant contends that it was only after he was transported to the Fayette County jail and placed into the custody of the Fayette County Sheriff's Office that he received medical treatment.

Appellees contend otherwise, asserting that appellant never asked for medical treatment or made any complaint that he had been mistreated. The officers argue that appellant was healthy throughout his stay in the city jail. The preliminary health screen made when appellant was booked into the city jail shows that appellant complained about soreness in his groin.

After appellant arrived at the county jail, he complained that he was in extreme pain, that there was blood in his urine, and that his right testicle was swelling. On January 26, 1996, appellant was transported to the emergency room at Fayette County Memorial Hospital. There, his right testicle was examined and drained of excess fluid. Appellant was returned to the county jail that night.

On January 27, 1996, appellant continued to complain about pain and swelling, as well as bleeding from the incision. He was returned to the emergency room. Examination of appellant's scrotum revealed that the stitches and dressings from the earlier operation had been manipulated. The stitches and dressings were replaced, but a nurse later noticed appellant removing the new dressings. Appellant was cautioned against touching the stitches or dressings and again released to the county jail.

On February 17, 1996, appellant again complained about discomfort. He was again transported to the emergency room because his right testicle was severely

swollen. Since that time, appellant has had numerous follow-up visits with his treating physicians. On February 21, 1996, appellant made an official complaint to the county jail, contending that he had been neglected at both jails. That same day, appellant's father made a complaint to the WCHPD alleging that appellant had been beaten during his arrest and his condition ignored in the city jail.

On October 11, 1996, appellant filed a complaint against appellees, individually and in their official capacities as police officers. Appellant sought $50,000 for personal injuries and $250,000 in punitive damages from each of the officers. On November 1, 1996, appellees filed an answer denying all of appellant's allegations and raising a number of defenses.

On January 5, 1999, appellees filed a motion for summary judgment, contending that they had qualified immunity from suit pursuant to R.C. 2744.03(6). Appellees argued that they used only the minimum force necessary when arresting appellant, and that he was never denied medical assistance. Included with the motion were affidavits from each appellee and from Vanessa Ruth stating that excessive force was not used and that appellant had resisted arrest.

On January 29, 1999, appellant filed a memorandum opposing summary judgment. Appellant argued that the officers used excessive force and ignored his medical condition. Appellant attached a portion of his deposition in which he states his version of what occurred during his arrest and his time in jail. Appellant also attached the jail incident reports of his complaints concerning his condition.

On April 2, 1999, the trial court filed its judgment entry granting appellees' motion for summary judgment. In its entry, the trial court included no factual or legal findings. Appellant appeals, raising a single assignment of error:

"It is error for the court to sustain a motion for summary judgment when there is credible testimony and independent medical evidence to the contrary."

In his assignment of error, appellant contends that the trial court erred in granting summary judgment because substantial factual issues remain unresolved. Appellant argues that there was credible evidence that appellees used excessive force when arresting him and ignored his medical condition after arrest.

Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131. Summary judgment will be granted if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. *Id.* An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. *Link v. Leadworks Corp.*

(1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144. A dispute of fact is "material" if it affects the outcome of the litigation, and is "genuine" if demonstrated by substantial evidence going beyond the allegations of the complaint. *Burkes v. Stidham* (1995), 107 Ohio App.3d 363, 371, 668 N.E.2d 982, 986–987.

When deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044, 1046–1047. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Id.,* citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1126. In reviewing the moving party's motion, a trial court should award summary judgment with caution. *Welco Industries,* 67 Ohio St.3d at 346, 617 N.E.2d at 1131. Nevertheless, a summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. *Id.*

In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision when making its own decision. *Beardsley v. Manfredi Motor Transit Co.* (1994), 97 Ohio App.3d 768, 769, 647 N.E.2d 555.

Political subdivision and political subdivision employee immunity from suit is governed by R.C. 2744.03, which provides, in pertinent part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * * *

"(6) * * *, the employee is immune from liability unless one of the following applies:

"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

For purposes of R.C. Chapter 2744, "wanton or reckless" misconduct under R.C. 2744.03(A)(6) "may be viewed as the functional equivalent of 'willful or

wanton misconduct' under R.C. 2744.02(B)(1)(b)." *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 516, 605 N.E.2d 445, 450, discretionary appeal to the Supreme Court of Ohio denied in (2000), 64 Ohio St.3d 1443, 596 N.E.2d 472.

■ "Wanton" misconduct may be described as "a degree greater than negligence." *Id.* at 515, 605 N.E.2d at 449. This conduct is characterized by "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Id.*, citing *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. An individual acts "recklessly" when he "does an act or intentionally fails to do an act which is in his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." (Citations omitted.) *Lipscomb v. Lewis* (1993), 85 Ohio App.3d 97, 102, 619 N.E.2d 102, 105.

■ By this definition, "reckless" misconduct, for purposes of R.C. Chapter 2744, is the equivalent of "willful" misconduct. *Brockman,* 78 Ohio App.3d at 516, 605 N.E.2d at 450. "Willful" misconduct is "something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct." *Id.* at 515, 605 N.E.2d at 449. The intention underlying such misconduct relates to the misconduct, not the result. Thus, "willful" misconduct is "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Id.*, quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 80 N.E.2d 122.

■ Because the line between willful or reckless misconduct, wanton misconduct, and ordinary negligence can be a fine one, "the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of the evidence." *Brockman,* 78 Ohio App.3d at 517, 605 N.E.2d at 450. Similarly, the Third District Court of Appeals has stated, "[t]he issue of wanton misconduct is normally a jury question." *Edinger v. Allen Cty. Bd. of Commrs.* (Apr. 26, 1995), Allen App. No. 1–94–84, unreported, 1995 WL 243438, citing *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652.

█   In the instant case, we cannot agree with the trial court that appellees are summarily entitled to immunity from suit. Even if we assume that appellant did, in some way, resist the efforts of the officers to arrest him, that does not necessarily lead to the conclusion that the officers could treat appellant in an abusive manner. Nor would such an assumption justify the use of such force against appellant as to cause a testicle to swell to an abnormal size.

Appellant complained of pain in his groin when booked into the city jail on January 16, 1996. Just two days later, appellant had blood in his urine. Yet, it was not until January 26, 1996, when appellant was in the custody of the sheriff's office, that appellant was taken to the emergency room.

The facts of this case require, in the least, further inquiry to determine whether the actions of the arresting officers were reasonable under the circumstances, or whether the officers acted in a malicious, willful or wanton manner. When viewing the evidence in a light most favorable to appellant, substantial questions are present regarding appellant's treatment when arrested and while in the city jail. Should such questions not be resolved, appellees' alleged actions and omissions must be considered by a jury to determine whether they rise to the level of malicious, wanton or reckless misconduct or were done in bad faith.

We find that substantial factual issues are present which preclude the granting of appellees' motion for summary judgment. The trial court erred in granting said motion. Accordingly, appellant's assignment of error is sustained.

The judgment of the trial court is reversed.

*Judgment reversed.*

WALSH and VALEN, JJ., concur.