HUNTER, Admr., Appellant,

v.

CITY OF COLUMBUS et al., Appellees.

[Cite as *Hunter v. Columbus* (2000), 139 Ohio App.3d 962.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–463.

Decided Dec. 5, 2000.

964

*Lamkin, Van Eman, Trimble, Beals & Rourke* and *Tim Van Eman,* for appellant.

*Janet E. Jackson,* Columbus City Attorney, and *Christopher R. Yates,* Assistant City Attorney, for appellees.

———————

JOHN W. MCCORMAC, Judge.

Richard M. Hunter, individually as husband of Brenda Hunter and as administrator of her estate, plaintiff-appellant, commenced an action against defendants-appellees city of Columbus and Columbus Firefighter Joseph E. Ewing. The complaint was a wrongful death action alleging that the city of Columbus and its emergency vehicle driver were negligent in striking the vehicle in which the deceased Brenda Hunter was occupying on February 7, 1998. Plaintiff alleged that the fire department vehicle was not making an emergency call and that ordinary negligence was sufficient. Plaintiff also alleged that the driver was guilty of willful and wanton misconduct, which eliminated any immunity even if he were on an emergency call.

Defendants answered, denying any liability for the accident on the basis that its vehicle was responding to an emergency alarm and that it was not operated in a willful and wanton manner.

After substantial discovery, defendants moved for summary judgment, asserting that there was no genuine issue of material fact about whether they were responding to an emergency call and whether the vehicle was operating in a willful and wanton manner. Both parties submitted Civ.R. 56(C) materials including depositions, answers to interrogatories, and affidavits.

The trial court granted defendants' motion for summary judgment, stating that the call on which the vehicle was proceeding was an emergency call and that defendant Ewing's conduct was not willful, wanton, or reckless. Plaintiff appeals, asserting the following assignment of error:

"The Trial Court erred in granting Defendants–Appellees' Motion for Summary Judgment based on its conclusion that Defendant Ewing was on an emergency run and that no reasonably jury could find that Defendant Ewing acted in a wanton, willful, or reckless manner in causing the death of Brenda Hunter."

This court's standard for reviewing summary judgment is the same as that of the trial court, and, thus, the review must be conducted de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. Civ.R. 56(C) provides that summary judgment is appropriate only where a review

of the appropriate evidence establishes (1) there is no genuine issue as to any material facts, (2) the moving party is entitled to judgment as a matter of law and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. The non-moving party is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

The facts most favorable to the plaintiff, the nonmoving party, are that the city of Columbus, Division of Fire, received a call from a woman who lived one mile from the fire station and who reported that she was having difficulty breathing. That information was relayed to firefighters Ewing and Thompson, who immediately left the fire station with lights and sirens running. It was winter, February 7, 1998 at about noon, and the streets were dry and clear. Traffic was relatively light for Sullivant Avenue. After traveling about one-half mile, the vehicle approached Sullivant Avenue and Wilson Bridge Road. Sullivant Avenue has a speed limit of thirty-five miles per hour. Vehicles blocked both westbound lanes, the direction in which the emergency vehicle was traveling. A few car lengths prior to reaching stopped vehicles in the left westbound lane, driver Ewing veered into one of the eastbound lanes to pass these vehicles. At that time, according to an expert who evaluated the skid marks, the emergency vehicle was traveling at least sixty-one miles per hour. At the same time that the emergency vehicle veered into the left lane, Brenda Hunter, who was headed west, turned across the eastbound lanes apparently to enter a shopping center parking lot. The defendants' vehicle struck decedent's vehicle killing her. The expert witness for plaintiff testified that the fire department vehicle was proceeding at fifty-two miles per hour at the time of the collision. The rule of the Columbus Fire Department at the time of the collision was that an emergency vehicle should not proceed over twenty miles an hour when proceeding left of center as did the emergency vehicle at the time of this collision. Driver Ewing professed no knowledge of that rule, but the passenger paramedic Thompson said he was aware that was the rule. Ewing said that the recommendation is that they not go over ten miles per hour more than the speed limit. They both stated that they thought Ewing was proceeding safely and going around forty-five miles per hour. However, for the purposes of summary judgment, it must be assumed that he was operating the vehicle at a speed of at least sixty-one miles per hour at the time he went left of center, which was estimated to be two to three hundred feet from the place where the collision occurred.

Both parties obtained the affidavit of an eyewitness, Demos, and the affidavits differed slightly. However, by all of the testimony there was at least one and maybe more cars behind the decedent's car when the emergency vehicle crossed

into the "wrong lane" a few car lengths behind the rear-stopped vehicle. Dr. Weichel, Ph.D., a qualified expert witness, testified that the speed at impact was fifty-two miles per hour (76.5 feet per second) at the time of the collision and at least sixty-one miles per hour (89.7 feet per second) before braking.

R.C. 2744.02(A)(1) provides immunity to political subdivisions as follows:

"* * * [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The extent of this immunity is limited by R.C. 2744.02(B), which provides:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function, as follows:

"(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority. * * *"

There are additional exceptions to a political subdivision's liability for its employee's negligent operation of a motor vehicle when:

"(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in a duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

"(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, * * * the operation of the vehicle did not constitute willful or wanton misconduct * * *."

An employee of a political subdivision is similarly immune from liability for his own negligent acts as follows:

"(6) [An] employee is immune from liability unless one of the following applies:

"* * *

"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b).

The first issue in this case is whether the city of Columbus emergency vehicle was on an emergency call. Plaintiff presented evidence that the woman who called in stating that she had difficulty breathing lived only one mile from the fire station and that during the two years prior to the accident in question, she had called the fire department for emergency help about one hundred twenty-seven times and that they had never transported her to a hospital. Both Ewing and Thompson knew of this woman and had been to calls at her house prior to February 7, 1998. Thus, plaintiff argues that it is a question of fact about whether it was an emergency call.

We reject plaintiff's argument. Whether it is an emergency call depends upon the report given to the team responding. Here, the report was "difficulty breathing." That constitutes an emergency regardless of whether there were other calls by the same person that may not have been an emergency. It would be unfair and inappropriate to require the firemen and paramedics to evaluate whether the instant situation constituted an emergency based upon past experience if the nature of the call reported is one that calls for an emergency response. The reported emergency situation, "difficulty breathing," is sufficient *per se* to make it an emergency call. Thus, even though there is genuine issue of fact concerning the negligence of Ewing, defendants are entitled to a summary judgment unless there is a genuine issue of fact concerning willful or wanton misconduct or, in the situation of Ewing, reckless conduct.

The facts most favorable to plaintiff concerning whether there was evidence from which a trier of fact could reasonably find willful or wanton misconduct are that the emergency vehicle was traveling sixty-one miles per hour, left of center, on a street where the speed limit is thirty-five miles per hour and in violation of a Columbus fire department rule that the vehicle operator should not travel more than twenty miles per hour when in the wrong lane. It was winter, February 7, 1998, an operator of an emergency vehicle can reasonably assume that drivers have more difficulty hearing sirens because of the car windows being closed and radios and heaters being operated. The decedent's view was blocked by at least one vehicle behind her. Moreover, the emergency vehicle left the fire station less than one-half mile from where the collision occurred and, at the rate of speed it was traveling, there would be very few seconds for a driver to process hearing the siren and respond to it. The emergency squad vehicle may have come in actual view of decedent when she made an otherwise legal left turn only three or four seconds before the accident occurred. The driver of the emergency vehicle did not have time to slow his speed appreciably and the driver of the vehicle that was struck was in a similar or worse position as far as to reacting after the turn

was commenced. A person does not normally expect a vehicle to be going the wrong way.

The question is whether a reasonable jury member could find wanton or willful misconduct. At oral argument, plaintiff's counsel conceded that the conduct did not meet the definition of willful misconduct at least to the extent that he did not intend to cause the accident. We assume his motives were humanitarian.

■ The issue is whether there was enough evidence of wanton or willful misconduct to provide a genuine issue of fact for the jury. We agree with the Eleventh District Court of Appeals that the standard for the driver, for purposes of " 'wanton or reckless,' misconduct under R.C. 2744.03(A)(6) 'may be viewed as the functional equivalent of "willful or wanton misconduct" under R.C. 2744.02(B)(1)(b).' *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 516, 605 N.E.2d 445, 450, discretionary appeal to the Supreme Court of Ohio denied in (2000), 64 Ohio St.3d 1443, 596 N.E.2d 472." *Ruth v. Jennings* (1999), 136 Ohio App.3d 370, 374–375, 736 N.E.2d 917, 919–921.

We also adopt the following analysis from *Ruth*:

■ " 'Wanton' misconduct may be described as 'a degree greater than negligence.' [*Brockman, supra*] at 515, 605 N.E.2d at 449. This conduct is characterized by 'the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor.' *Id.*, citing *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. An individual acts 'recklessly' when he 'does an act or intentionally fails to do an act which is in his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' (Citations omitted.) *Lipscomb v. Lewis* (1993), 85 Ohio App.3d 97, 102, 619 N.E.2d 102, 105.

■ "By this definition, 'reckless' misconduct, for purposes of R.C. Chapter 2744, is the equivalent of 'willful' misconduct. *Brockman*, 78 Ohio App.3d at 516, 605 N.E.2d at 450. 'Willful' misconduct is 'something more than negligence and it involves a more positive mental state prompting the injurious act than does wanton misconduct.' *Id.* at 515, 605 N.E.2d at 449. The intention underlying such misconduct relates to the misconduct, not the result. Thus, 'willful' misconduct is 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of

resulting injury.' *Id.,* quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 37 O.O. 243, 80 N.E.2d 122.

"Because the line between willful or reckless misconduct, wanton misconduct, and ordinary negligence can be a fine one, 'the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of the evidence.' *Brockman,* 78 Ohio App.3d at 517, 605 N.E.2d at 450. Similarly, the Third District Court of Appeals has stated, '[t]he issue of wanton misconduct is normally a jury question.' *Edinger ·v. Allen Cty. Bd. of Commrs.* (Apr. 26, 1995), Allen App. No. 1–94–84, unreported, 1995 WL 243438, citing *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652." *Id.* at 375, 736 N.E.2d at 920–921.

Defendants argued and the trial court found that since the operator of the emergency vehicle had his lights and siren running, he had complied with the requirements of "any care" as stated in *Matkovich v. Penn Central. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. Thus, the trial court found defendants could not be held to be wantonly or recklessly liable. We reject that as a simplistic analysis. Under that criteria, you could drive an emergency vehicle in ·any manner that you please and not be guilty of wanton or reckless misconduct simply because you activated your siren and lights. Even looking where you are going or applying one's brakes meets the literalistic, but not legal, definition of "any care." If "any care" is construed in that fashion, the exception becomes virtually meaningless.

The question of whether conduct is willful or wanton as considered here in relation to whether the probability of harm is great and known to the alleged tortfeasor requires a more substantial analysis than that. Going left of center alone is dangerous under any circumstances, but the danger is greatly reduced if the speed is slow. The Columbus fire department rule is designed to protect fire personnel, other motorists, and the person to whom emergency aid is to be rendered, and it is a reasonable rule. Yet, in this instance, the driver of the vehicle was stated to have been proceeding at least sixty-one miles per hour, having veered out into the wrong lane only two to three hundred feet prior to the place where the accident occurred. The city argues that it should not be penalized because its rule of twenty miles per hour is not required by law and is more strict than many other municipalities. That may be true and we agree that the rule is not *per se* determinative, but it can be taken into consideration in determining what a reasonable speed is to protect the safety of all concerned. Ewing had driven an emergency vehicle for eight years and undoubtedly was well aware that motorists often do not see or hear emergency vehicles (or may ignore

them) and that he needed to be on the alert for vehicles appearing in his path of travel. At the speed of sixty-one miles per hour, the vehicle may be on top of a stopped vehicle before even an alert driver can react.

Each situation like this must be evaluated on its own facts. The city cites other situations where emergency vehicle drivers were not found to be driving in a wanton or reckless manner, but each situation must be evaluated on its own unique facts. In this case, the circumstances are extreme enough that evaluation of whether the recklessness was great enough to be willful or wanton misconduct is a matter for the trier of fact. The fact that the lights and siren were on is, of course, a matter that can be considered by the jury in determining whether plaintiff proved wanton or reckless misconduct, but the driver's conduct must be evaluated based upon all of the circumstances at the time he choose to veer into the wrong lane at the speed he was traveling.

The final issue is whether the city was negligent in providing training to its emergency vehicle drivers, including Ewing. There was no evidence offered by plaintiff that would lead one to believe that the city was even negligent in training its emergency vehicle operators, let alone guilty of wanton or reckless misconduct.

Plaintiff's assignment of error is sustained. The cause is remanded to the trial court with instructions to overrule defendants' motion for summary judgment.

The cause is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded with instructions.*

DESHLER and PETREE, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.