[Cite as *Main Street Marathon, L.L.C v. Maximus Consulting, L.L.C.*, 2014-Ohio-2034.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| MAIN STREET MARATHON, L.L.C. | : | | JUDGES: |
| | : | | |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| MAXIMUS CONSULTING, L.L.C., ET AL. | : | | Case No. 2013CA00173 |
| | : | | |
| | : | | |
| Defendants - Appellees | : | | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
                                of Common Pleas, Case No.
                                2012 CV 02202


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                May 12, 2014


APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

ROBERT J. TSCHOLL                       BRENDAN M. RICHARD
JENNIFER L. ARNOLD                      THOMAS P. MANNION
400 South Main Street                   Mannion & Gray Co., L.P.A.
North Canton, Ohio 44720                1375 E. 9th Street, 16th Floor
                                        Cleveland, OH 44114

DONALD P. WILEY
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main Street
North Canton, OH 44720

*Baldwin, J.*

{¶1}    Plaintiff-appellant Main Street Marathon, LLC appeals from the July 31, 2013 Order of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by defendants-appellees Maximus Consulting, LLC and Maximus Tank Management.

## STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant Main Street Marathon (MSM) is a family owned gas station located in Alliance, Ohio that is owned by Chris Ranieri and managed by his sister Tammy Ranieri Borelli.  In 2011, Ranieri decided to upgrade gasoline pumps (known as dispensers) at his gas station. He wanted to upgrade one dispenser island.

{¶3}    On or about September 15, 2011, Ron Cseh, as the Sales and Marketing Coordinator for appellee Maximus Consulting, LLC, which also does business as Maximus Tank Management, presented a proposal to Ranieri for the upgrade of one dispenser island. The proposal stated that Maximus would perform the work for $6,400.00.  On or about September 16, 2011, Tammy Ranieri Borelli, as agent for MSM, accepted the proposal. The contract entered into between the parties stated, in relevant part, as follows:

{¶4}    "LIMITATION OF LIABILITY: In no event will Maximus' liability to Client, or to third parties claiming through Client including, without limitation, Client's insurers, exceed $3,300.00 regardless of the legal theory upon which a claim may be based, including contract warranty, tort, or indemnification. Without limiting the generality of the foregoing, this limitation is applicable to loss, destruction, or damage to Client property while in the possession or control of Maximus. In no event will Maximus be liable to

Client or to third parties claiming through Client (including Client insurers) for any incidental or consequential damages whatsoever regardless of the legal theory upon which the claim may be based."

{¶5}    Tammy Ranieri Borelli testified during her deposition that she probably read the first page of the four page document.

{¶6}    Appellee Maximus Consulting, LLC  does not actually  perform the work but rather oversees general contractors who install underground storage tanks and dispensers.   It represents a general contractor or customer who has hired a subcontractor to do the work to ensure that the work is performed according to contract specifications.   Appellee Maximus Consulting hired John Cardamone to perform the work specified for in the contract in this case.  Cardamone allegedly swapped the diesel and premium fuel lines and improperly capped a gas line, causing 70 gallons of fuel to be released into the soil. Appellant MSM reported the spill to the appropriate government agencies.

{¶7}    On July 12, 2012, appellant MSM filed a complaint against appellees Maximus Consulting, LLC and Maximus Tank Management and against Liberty Mutual Group, Inc. and Liberty International Underwriters. Liberty Mutual had issued a policy of insurance to appellees. The complaint set forth a cause of action for breach of contract against appellees and a cause of action alleging bad faith against Liberty Mutual. Appellant, in its complaint, alleged that appellees had failed to perform the work in a workmanlike manner and failed to fulfill the contract terms. On August 6, 2012, appellant filed a Notice of Partial Voluntary Dismissal of Liberty Mutual Group, Inc. and Liberty International Underwriters.

{¶8} On September 6, 2012, appellees filed an answer to the complaint and a counterclaim for breach of contract against appellant. Appellees alleged that appellant owed them money under the contract. Appellant filed an answer to the counterclaim on September 12, 2012.

{¶9} Thereafter, on March 19, 2013, appellant, with leave of court, filed an amended complaint adding JTM & B Contracting & Petro Services, Inc. and JTM & B Contracting & Excavation as defendants.

{¶10} On March 21, 2013, appellees filed a Motion for Summary Judgment, arguing that under the exculpatory clause in the parties' contract, their liability to appellant was limited to $3,300.00 and that through their insurer, they had already paid $57,659.90 toward appellant's damages. Appellees, on April 1, 2013, filed an answer to the amended complaint and a counterclaim for breach of contract against appellant. Appellant filed an answer to the counterclaim on April 5, 2013.

{¶11} On April 22, 2013, appellant filed a response in opposition to appellees' Motion for Summary Judgment. Appellant, on May 3, 2013, filed a Notice of Voluntary Dismissal of JTM & B Contracting & Petro Services, Inc. Appellant never obtained service on JTM & B Contracting and Excavating.

{¶12} Appellees filed a Supplemental Motion for Summary Judgment on May 28, 2013, arguing that appellant's claims should be dismissed because there was no genuine issue of material fact as to proximate cause and/or alleged damages. On June 11, 2013, appellant filed a response in opposition to such motion.

{¶13}   Pursuant to an Order filed on July 31, 2013, the trial court granted appellees' Motion for Summary Judgment. The trial court, in its Order, held that the "limitation of liability" clause contained in the parties' contract was valid.

{¶14}   Appellant now raises the following assignments of error on appeal:

{¶15}   THE TRIAL COURT COMMITTED ERROR BY NOT FINDING THE EXCULPATORY PROVISION IN THE CONTRACT UNENFORCEABLE AS AGAINST PUBLIC POLICY.

{¶16}   THE TRIAL COURT ERRED BY APPLYING THE WRONG STANDARD FOR PLEADING WANTON MISCONDUCT.

{¶17}   THE TRIAL COURT ERRED BY NOT FINDING WANTON MISCONDUCT IN THIS MATTER.

{¶18}   THE TRIAL COURT COMMITTED ERROR AS A MATTER OF LAW BY FINDING THAT THE CLAUSE WAS A VALID EXCULPATORY CLAUSE.

## SUMMARY JUDGMENT STANDARD

{¶19}   Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56, which was reaffirmed by the Ohio Supreme Court in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St .3d 447, 448, 1996-Ohio- 211, 663 N.E.2d 639:

{¶20}   "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex*

*rel. Parsons v. Fleming* (1994)*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977) 50 Ohio St.2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E.2d 267, 274."

{¶21}   As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgment motions on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 56 N.E.2d 212 (1987).

{¶22}   It is pursuant to this standard that we review appellant's assignments of error.

I

{¶23}   Appellant, in its first assignment of error, argues that the trial court erred in not finding the exculpatory provision in this matter to be against public policy. Appellant argues that there is a public policy interest in preventing petroleum from spreading into soil, which is what happened in the case sub judice, and that, therefore, the exculpatory provision is against public policy.

{¶24}   Although attempts to limit or excuse liability are disfavored in law, limiting or exculpatory language in a contract will be enforced unless that language is unconscionable, in violation of important public policy considerations, or vague and ambiguous. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 832, 621 N.E.2d 1294 (2nd Dist.1993).

{¶25}   Generally, the inclusion of an exculpatory clause in a contract does not violate public policy. *Hurst v. Enterprise Title Agency, Inc.,* 157 Ohio App.3d 133, 2004-Ohio- 2307, 809 N.E.2d 689 (11th Dist.).  "In considering whether a provision in a

contract is against 'public policy[,]' * * * we must remember that the freedom to contract is fundamental, and that we should not lightly disregard a binding agreement, unless it clearly contravenes some established or otherwise reasonable public interest." *Zivich v. Mentor Soccer Club, Inc.*, 11th Dist. Lake No. 95–L–184, 1997 WL 203646 (Apr. 18, 1997) at 10. In so considering, we examine "whether the goods or services contracted for are necessary for a person's living needs; whether the supplier assumes a quasi-public function in providing the goods [or services]; whether the supplier has been granted a monopoly in providing a specific service; and whether the limitation provision is such that the customer is in a position to assent to its terms." *Collins,* 86 Ohio App.3d at 832, citing to *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 154-157, 375 N.E.2d 410 (1978).

{¶26} In the case sub judice, the services provided for by appellees are not necessary for a person's living needs. Moreover, appellees, as the supplier, did not assume a quasi-public function in providing the services and there is no evidence that appellees have been granted a monopoly in providing the service that they did, which was consolidation of a gas pump. Finally, we find that the limitation provision is such that appellant, as the customer, was in a position to assent to its terms. Appellant could have hired other providers to perform the same service.

{¶27} Moreover, while, as is stated above, appellant maintains that there is a public policy interest in preventing petroleum from spreading into soil, we note that appellant conceded that it was not responsible for the cost of the soil clean-up, which was paid for through a State fund. While there may be additional damages to the gas

station itself that are not covered by the State fund, we are unaware of any public policy preventing appellees from limiting their liability for such damages.

{¶28}    Appellant's first assignment of error is, therefore, overruled.

II, III

{¶29}    Appellant, in its second assignment of error, argues that the trial court erred by applying the wrong standard for pleading wanton misconduct. In its third assignment of error, appellant maintains that the trial court erred by not finding wanton misconduct in this matter.

{¶30}    An exculpatory clause cannot bar liability for acts that are willful or wanton. *Bejian at* 158.   Essentially, wanton misconduct is the failure to exercise any care. *Hunter v. City of Columbus,* 139 Ohio App.3d 962, 969, 746 N.E.2d 246 (10th Dist. 2000). Wanton misconduct has also been likened to conduct that manifests a "disposition to perversity." *Roszman v. Sammett,* 26 Ohio St.2d 94, 269 N.E.2d 420 (1971), paragraph two of the syllabus. " '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' " *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356, 1994-Ohio-368, 639 N.E.2d 31, quoting *Roszman,* supra. at 96-97.

{¶31}    Upon our review of the amended complaint, we concur with the trial court that appellant failed to allege willful or wanton misconduct in its complaint. We concur with appellees that the allegations in this case involve negligence and breach of contract.

{¶32} Moreover,  assuming,  arguendo,  that  appellant  pleaded  wanton misconduct, we find that the trial court did not err in granting appellees' Motion for

Summary Judgment because there is no evidence that appellees failed to exercise any care whatsoever. Ronald Cseh, the Vice President of Sales for appellee Maximus Consulting, testified during his deposition that he hired John Cardamone to do the work in this case and that he had used Cardamone before on more than 12 or 15 jobs without a problem. Cseh testified that he had been working with Cardamone for about 12 months before hiring him in this matter. He further testified that he required that Cardamone have insurance. While Cardamone did not give him a certificate of insurance, Cseh testified that Cardamone had provided proof of insurance on a previous job and that he did not feel that he needed to oversee Cardamone because he trusted him to perform the job correctly. As noted by the trial court, the evidence shows that appellees hired a "knowledgeable, certified individual to oversee the project."

{¶33} Based on the foregoing, appellant's second and third assignments of error are overruled.

IV

{¶34} Appellant, in its fourth assignment of error, argues that the trial court erred by finding that the clause, which is cited above, was a valid exculpatory clause rather than an indemnification clause which is prohibited in construction contracts pursuant to R.C. 2305.31

{¶35} Ohio law defines indemnity as arising from "contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid to require reimbursement." *Worth v. Aetna Cas. & Sur. Co.,* 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987). In other words, when a person is secondarily

liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. *See Globe Indemn. Co. v. Schmitt,* 142 Ohio St. 595, 603, 53 N.E.2d 790 (1944). In an indemnity action, a plaintiff seeks complete reimbursement from the party primarily liable for the damages the plaintiff has incurred.

{¶36} In turn, valid exculpatory clauses or releases constitute express assumptions of risk. *Anderson v. Ceccardi* 6 Ohio St.3d 110, 114, 451 N.E.2d 780 (1983).

{¶37} We concur with the trial court that the clause in this case is an exculpatory clause and not an indemnification clause. As noted by the trial court, the clause does not shift all of the damages to one of the contracting parties regardless of fault. Moreover, appellees are not held harmless because they are still responsible for damages up to $3,300.00. Nothing in the clause authorizes appellees to obtain complete reimbursement from a joint tortfeasor. Under the clause in this case, appellant assumed all but $3,300.00 of the risk.

{¶38} Appellant's fourth assignment of error is, therefore, overruled.

{¶39}    Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.