[Cite as *Freeman v. Lovejoy*, 2023-Ohio-503.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRANDON FREEMAN | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2022 CA 00016 |
| DAVID A. LOVEJOY, ET AL., | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Fairfield County Court of
Common Pleas, Case No. 21CV151


JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 21, 2023


APPEARANCES:


For Plaintiff-Appellee

BRIAN W. ROSS
Ross, Midian & Breitmayer, LLC
846 South High Street
Columbus, Ohio 43206

For Defendant Allstate Fire and
Casualty Insurance Company

JOEL S. MOORE
P.O. Box 2166
Hudson, Ohio 44236

For Defendant-Appellant

MICHAEL J. VALENTINE
MELVIN J. DAVIS
THOMAS N. SPYKER
Reminger Co., L.P.A.
200 Civic Center Drive – Suite #800
Columbus, Ohio 43215

*Hoffman, J.*

**{¶1}**   Defendant-appellant David A. Lovejoy appeals the April 25, 2022 Entry and Order entered by the Fairfield County Court of Common Pleas, which denied his motion for summary judgment.  Plaintiff-appellee is Brandon Freeman.

STATEMENT OF THE CASE AND FACTS

**{¶2}**   On April 16, 2021, Appellee filed a complaint for personal injury arising out of an accident which occurred on April 19, 2019. The complaint named Appellant, Truro Township Fire Department ("the Fire Department"), and Truro Township ("the Township") as defendants.  Appellant, the Fire Department, and the Township filed an answer and defenses on April 30, 2021.  The matter proceeded through the discovery process.

**{¶3}**   On February 1, 2022, Appellant, the Fire Department, and the Township filed a joint motion for summary judgment.  Appellee filed a memorandum in opposition on March 2, 2022.  The trial court granted Appellant, the Fire Department, and the Township an extension of time in which to file their joint reply in support of their motion for summary judgment, and such was filed on March 22, 2022.

**{¶4}**   The following evidence was before the trial court from depositions, the Fire Department Suggested Operating Guideline ("S.O.G."), Pickerington Police Department Traffic Crash Report No. PPD-1900546 ("Crash Report"), and Pickerington Police Department Reconstruction Report PPD-1900546 ("Reconstruction Report"):

**{¶5}**   On April 19, 2019, at approximately 9:15 a.m., Appellee was driving his white Honda Civic westbound on Refugee Road in Pickerington, Fairfield County, Ohio, towards the intersection of Refugee Road and SR 256.  Appellee recalled the light at the intersection was green for through traffic and there were no vehicles in front of him.  There were at least ten cars in both the right and left lanes, stopped at their respective red lights.

Appellee was traveling the speed limit, but took his foot off the gas pedal as he approached the intersection. Once he realized the light was still green, Appellee proceeded to accelerate through the intersection. Appellee looked to his left then to his right and observed a fire engine approximately 15 feet from him. "As soon as I saw the fire truck I let off the gas and I didn't have time to hit the brake, and I just collided into it." Deposition of Brandon Freeman at 36. Appellee did not recall hearing sirens.

**{¶6}** At the same time, Appellant was operating a Truro Township fire engine southbound on SR 256 towards the same intersection, in response to an emergency call. The through light for southbound traffic was red. Appellant maneuvered the fire engine to the left of the stopped traffic. Appellant stated he "would have been [in] the turn lane, quite possibly the left of that [in the northbound lane]," but did not "know exactly where [his] position was, whether [he] was completely in the turn lane or partially out of the turn lane." Deposition of David Lovejoy at 16. Appellant did not bring the engine to a complete stop prior to entering the intersection, but slowed to a speed of 15-20 mph. The fire engine was equipped with an electronic siren, a mechanical siren, and an air horn, and all three alarms as well as the emergency lights were activated prior to approaching the intersection. The truck was not equipped with an Opticom system which can be activated to change traffic signals.

**{¶7}** Lieutenant Conaway was in the front seat next to Appellant. Lt Conaway's responsibilities included, inter alia, helping Appellant check intersections for traffic. As Appellant approached the intersection, Lt Conaway informed him the intersection was "clear right." Deposition of David Lovejoy at 19. Appellant acknowledged Lt Conaway would not have a good view of the driver's side of the fire engine. *Id.* Appellant stated

he could see several car lengths down Refugee Road before passing the stop bar at the intersection. *Id.* at 24.

**{¶8}** Appellant had just entered the intersection when he observed Appellee's vehicle. Appellant explained, "We were not completely into the intersection past the stop bar," and only the front end of the fire truck had passed the stop bar. *Id.* at 20. Appellant told officers responding to the scene he attempted to stop, but was unable to do so. Appellant stated, "I had been on the brakes as we were approaching the intersection, lift [sic] my foot off the brake to start to push the accelerator, and then back to the brake. So yes, I was pushing the brake again at the impact, or attempting to push the brake at the impact." *Id.* at 28.

**{¶9}** S.O.G. No. 161-18 addresses the operation of emergency vehicles and specifically provides:

VIII. SPEED

The driver shall maintain a speed consistent with safe operation of the vehicle under prevailing road conditions. All personnel driving any township vehicle shall use due regard for other drivers on the road. Remember, you are asking for the right-away, you do not automatically receive it!

* *

X. DRIVING THROUGH INTERSECTIONS

When the apparatus approaches an intersection, the driver shall be responsible for ensuring that all other traffic at the intersection is able to yield.  The apparatus should travel at such speed into and through the intersection that the vehicle would be able to stop immediately if necessary.  This applies even when the apparatus has a green light.

Truro Township Fire Department Suggested Operating Guideline No. 161-18 at 2-3.

{¶10} On the morning of April 19, 2019, Christine Zachrich was stopped in the right-hand lane on westbound Refugee Road, waiting to turn onto northbound SR 256.  Zachrich could not recall how many, if any, vehicles were in front of her in the lane.  As she waited at the light, Zachrich heard sirens and saw two emergency vehicles, traveling southbound on SR 256.  The light at the intersection was turning yellow.  Deposition of Christine Zachrich at 10.  At the same time, Zachrich noticed a white car in her rearview mirror approaching and passing her on the left-hand side.  Zachrich remembered, "I saw it approaching and I saw it move past me and realized it was not going to stop and was likely going to hit the emergency vehicle, and, in fact, it did." *Id.* at 12.  Zachrich stated the vehicle "was not going slow * * * 25, 30 miles an hour," and added, "[i]t did appear it was trying to make the light, yes, make it through the light before it turned red." *Id.* at 12, 13. Zachrich noted all the other vehicles at the intersection were stopped to allow the fire engine through. *Id.* at 14; Zachrich Traffic Witness Statement.  Zachrich went to the Pickerington Police Department later that day and completed a witness statement.

{¶11} Lieutenant Barry Curtis Wright with the Violet Township Fire Department was on duty on April 19, 2019, when he was dispatched to a fire on Brevard Circle, Violet Township, the same as Appellant.  While in route, Lt. Wright learned the fire was contained and he was not needed at the scene.  Lt. Wright decided to start his day of inspections and maneuvered his department SUV into the right-hand lane on Refugee Road in order to turn onto northbound SR 256.  Lt. Wright believed he was the first car in the turn lane.  He remained stopped to prevent traffic from moving as he was aware emergency vehicles from the Fire Department were on the way.  He heard the sirens and then saw the fire engine approach the intersection.  According to Lt. Wright, the engine "appeared to slow down, but did not stop, and proceeded into the intersection." Deposition of Barry Wright at 24.

{¶12} At the same time, Lt. Wright "saw out of [his] left vision a car come – a vehicle come by me, proceed into the intersection, and strike the fire truck in the front bumper, door/tire area of the fire truck on the driver's side." *Id.*  Lt. Wright did not see any other vehicles pass through the intersection prior to the vehicle which struck the fire truck. Lt. Wright provided a written witness statement to the Pickerington Police Department at the scene.  He recalled the roadway as wet, noting it had rained or was raining.  Lt. Wright estimated the speed of the fire engine between 20 and 25 mph, and the speed of Appellee's vehicle between 30 and 40 mph.  He described the area between the road and the CVS building as having "a bit of an incline. There is a stone wall that is pretty high right there * * * several mature trees in the area * * * It's very difficult to see a line of sight. So that's why you can't see a lot coming south [on SR 256] until you get closer to the

intersection. * * * it really is tough to see much of anything right there coming southbound."
*Id.* at 39-40.

**{¶13}** Pickerington Police Officer Thomas Spreen completed the Crash Report. Therein, Officer Spreen indicated the traffic was moderate, the road conditions were wet, and it was raining. Officer Spreen concluded Appellant was at fault for the accident, explaining Appellant entered "the busy intersection at an estimated speed of 20 mph to 25 mph without stopping on a red light. Therefore, I find that the driver of the fire truck did not use due regard when entering the intersection causing the accident." Crash Report at 8. Officer Spreen stated, "From the vantage point of the Unit 2 driver [Appellee]. I found that his view or initial observation point on the fire truck was partially obstructed by the CVS building, (4) trees, landscaping and landscaping wall (photo taken). I also find that his being able to hear the (2) sets of approaching sirens from the (2) Truro emergency vehicles while approaching the intersection would also have been obstructed by the physical barriers listed." *Id.*

**{¶14}** Pickerington Police Officer Corey Flanagan prepared the Reconstruction Report. Officer Flanagan was in the area and responded to the scene after the call came through his radio. Pickerington Police Chief Cheney instructed Officer Flanagan to take measurements. In preparing the Reconstruction Report, Officer Flanagan photographed the intersection and surrounding area and reviewed photographs taken of the accident. He did not speak with Appellant, Appellee, or any witnesses, but reviewed the witness statements. In completing the Reconstruction Report, Officer Flanagan also reviewed the digital video recordings from CVS and the gas station stations located at the corners of the intersection. Officer Flanagan estimated Appellee's vehicle was traveling between 35

and 40 mph.  His estimate for the speed of the fire engine (15 to 20 mph) based upon eye witness testimony.

**{¶15}** The Reconstruction Report described the area, noting SR 256 and Refugee Road are in a business district with SR 256 having five lanes of travel entering the intersection southbound and Refugee Road having three lanes of travel entering the intersection westbound.   Businesses are located on each of the four corners of the intersection.  Traffic conditions are the time of the crash were light to moderate.  The traffic signals were in normal operation.  The Reconstruction Report included forensic mapping and driver and witness statements. The Reconstruction Report detailed the environmental factors and specifically described "Obstructions" as follows:

> On the northeast corner of the intersection there are several medium sized trees that run along SR 256 and just south of CVS.  These trees were in bloom and present a vision obstruction from SR 256 north of the intersection to Refugee Rd. east of the intersection.
>
> Closer to the corner of the northeast side there is also a stone wall that presents a view and sound obstruction to the same areas.  The wall stands approximately six feet at its tallest point.
>
> Pickerington  Police  Department  Reconstruction  Report  PPD-1900546 at 6.

**{¶16}** Via Entry and Order filed April 25, 2022, the trial court granted summary judgment in favor of the Fire Department and the Township, finding the Fire Department

and the Township were statutorily immune from liability as Appellant did not act in a willful or wanton manner. However, the trial court denied Appellant's motion for summary judgment, finding a genuine issue of material fact exists as to whether Appellant operated the fire engine in a reckless manner.

{¶17} It is from this judgment entry Appellant appeals, raising as his sole assignment of error:

THE TRIAL COURT ERRED BY DENYING FIREFIGHTER DAVID LOVEJOY IMMUNITY, AS AN EMPLOYEE OF A POLITICAL SUBDIVISION, BECAUSE NO REASONABLE JUROR COULD CONCLUDE THAT HE ACTED RECKLESSLY WHILE RESPONDING TO AN EMERGENCY.

*Standard of Review*

{¶18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶19} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such

evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶20}** It is well established the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary *149 judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*Analysis*

**{¶21}** R.C. 2744.03(A) sets forth the immunity of employees of political subdivisions and the exceptions thereto, and provides, in pertinent part:

In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* *

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

* *.

R.C. 2744.03(A)(6).

**{¶22}** The trial court specifically found Appellant's "operation of the fire engine in this case did not rise to the level of wanton or willful misconduct." April 25, 2022 Entry

and Order at p. 4, unpaginated. However, the trial court concluded a genuine issue of material fact exists as to whether Appellant operated the fire engine in a reckless manner, explaining, "this case falls somewhere in the gray area between negligence and recklessness on the so-called 'spectrum of intent,' which precludes the Court from deciding the issue as a matter of law." *Id.* at p. 5, unpaginated. We agree.

{¶23} The Ohio Supreme Court has defined "reckless conduct" as follows:

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson*, 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

*Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 34.

{¶24} "The question of whether a person has acted recklessly is almost always a question for the jury." *Mashburn v. Dutcher,* 5th Dist. Delaware, 2012-Ohio-6283, 14 N.E.3d 383, ¶ 48, citing *Hunter v. Columbus,* 139 Ohio App.3d 962, 970, 746 N.E.2d 246 (10th Dist. 2000). "The spectrum of intent stretches from negligence, through reckless, to

intentional, and there are no bright lines." *Id.* at ¶ 50. Issues of sovereign immunity turn on the individual facts of any given case.

**{¶25}** It is uncontested Appellant was operating the fire engine within the scope of his official duties. The engine's two sirens, air horn, and lights were activated prior to reaching the intersection. As Appellant approached the intersection, Lt Conaway, who was in the front passenger seat, informed Appellant the intersection was "clear right." Deposition of David Lovejoy at 19. However, Appellee was approaching the intersection towards the left (driver's) side of the fire engine, and as Appellant acknowledged, Lt Conaway "doesn't have a good view of my side, so typically he'll look at his side." *Id.*

**{¶26}** Appellant did not bring the engine to a complete stop prior to entering the intersection, but rather entered the intersection against a red light at an estimated speed of 15-20 mph. At the time of impact, Appellant was pushing the brake, but was unable to stop the fire engine.

**{¶27}** S.O.G. No. 161-18 requires a driver to "maintain a speed consistent with safe operation of the vehicle under prevailing road conditions" and "use due regard for other drivers on the road." S.O.G. No. 161-18, Sec. VIII - SPEED. S.O.G. No. 161-18 further requires a driver, when approaching an intersection, ensure all other traffic at the intersection is able to yield and "travel at such speed into and through the intersection that the vehicle would be able to stop immediately if necessary." *Id.*, Sec. X – DRIVING THROUGH INTERSECTIONS.

**{¶28}** At the same time, Appellee was driving westbound on Refugee Road, approaching the intersection. The traffic light was green for through traffic and there were no vehicles in front of him. Appellee was traveling the speed limit, but took his foot off the

gas pedal as he approached the intersection. Once he realized the light was still green, Appellee proceeded to accelerate through the intersection. Appellee did not see or hear emergency sirens as he approached and entered the intersection. In the Crash Report, Officer Spreen noted, Appellee's "view or initial observation point on the fire truck was partially obstructed by the CVS building, (4) trees, landscaping and landscaping wall." Crash Report at 8. Officer Spreen also indicated the physical barriers around the intersection would have obstructed Appellee's ability to hear the approaching sirens of the emergency vehicles.

{¶29} The Reconstruction Report described the area as a business district with businesses on each of the four corners of the intersection. Traffic conditions at the time of the crash were light to moderate. SR 256 southbound has five lanes of travel entering the intersection. Refugee Road has three lanes of travel entering the intersection eastbound and three lanes of travel entering westbound. The Reconstruction Report detailed the obstructions in the area including several medium sized trees in bloom on the northeast corner of the intersection, running along SR 256. The Reconstruction Report noted the trees presented a visual obstruction and a stone wall, which was six feet at its tallest point, presented a view and sound obstruction.

{¶30} Viewing the evidence in a light most favorable to Appellee, we find reasonable minds could come to different conclusions about Appellant's operation of the fire engine given the visual and sound obstructions in the area, the number of lanes of travel Appellant was crossing. We further find the trial court did not err in denying Appellant's motion for summary judgment.

{¶31} Appellant's sole assignment of error is overruled.

{¶32} The judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Wise, J. concur